UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ALEXANDRA McCLANAHAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 1:19-CV-414-HAB |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner, Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

One of the fundamental tenets of social security law is that a reviewing court may not re-evaluate facts, re-weigh evidence, or substitute its own judgment for that of the administrative law judge. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). Where, as here, an ALJ reviews the record, cites evidence both for and against his decision, and reaches the conclusion that an applicant is not disabled, a court will almost always leave that decision undisturbed. But must it? Is there a point where a claimant has so many recognized impairments, so many diagnosed maladies, and so many debilitating conditions that a finding of non-disability becomes farcical? Stated another way, is a court required to leave common sense at the door simply because an ALJ has checked all the appropriate boxes?

These are the questions raised by the instant appeal. Plaintiff Alexandra McClanahan filed her Brief in Support of Complaint (ECF No. 14) on April 3, 2020. Defendant Andrew Saul, Commissioner of the Social Security Administration (the "Commissioner") filed his Memorandum in Support of the Commissioner's Decision (ECF No. 19) on July 9, 2020. Plaintiff filed her Reply (ECF No. 20) on July 23, 2020. This matter is now ripe for review.

**A.    Procedural History**

On May 5, 2016, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning April 28, 2015. The claim was denied initially and upon reconsideration. Thereafter, Plaintiff made a written request for hearing on January 6, 2017. That hearing occurred on January 12, 2018, in Fort Wayne. Both Plaintiff and vocational expert Mark Cheairs testified at the hearing.

On June 8, 2018, the ALJ issued his opinion finding that Plaintiff was not disabled (the "Decision"). Plaintiff sought review from the Appeals Council, which appeal was denied on July 25, 2019. Thereafter, Plaintiff timely filed her Complaint to Review Decision of Commissioner of Social Security (ECF No. 1).

**B.    Legal Analysis**

**1.    *Standard of Review***

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted).

In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th

2

Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of [his] reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

**2.    *The ALJ's Decision***

A person suffering from a disability that renders her unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from

doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

If a claimant's application is denied initially and on reconsideration, she may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1). An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether she has the residual functional capacity to perform her past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 28, 2015, the alleged onset date. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: disorders of the cervical, thoracic, and lumbarsacral spine (including degenerative disc disease, other degenerative changes, disc bulging/protrusions, scoliosis, hemangiomas, failed back and neck surgery syndrome, sacroiliitis, neuropathic pain, and chronic pain syndrome), degenerative joint disease in both knees and tendonitis in the right knee, and obesity. The ALJ also found that Plaintiff suffered from the following non-severe impairments: hypertension, hyperlipidemia, eye/vision problems (including bilateral cataracts and Horner's syndrome), history of rheumatoid arthritis, headaches/occipital neuralgia, kidney problems, blood sugar problems, hypothyroidism, asthma, vitamin D deficiency, bilateral carpal tunnel syndrome, history of reflect sympathetic dystrophy, remote fractures of the right wrists and both ankles, and urinary incontinence.

At step three, the ALJ determined that Plaintiff did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (R. 21). The ALJ specifically considered listing 1.04A, disorders of the spine.

After considering the medical evidence and testimony, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except that she cannot climb ladders, ropes, or scaffolds at all and she can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She must also avoid unprotected heights and she can only occasionally reach overhead bilaterally, operate foot controls bilaterally, and operate a motor vehicle.

(R. 22). Finally, the ALJ determined that Plaintiff could perform past relevant work, namely her past job as a medical fee schedule clerk.

**3.**     *The ALJ Decision is Inconsistent with, and Contrary to, the Record.*

No paragraph better encapsulates the incomprehensible logic of the ALJ better than the last full paragraph on page 24 of the Record. In that paragraph, the ALJ stated:

> The record also reflects that, since the alleged onset date, the claimant's physical examination findings have been largely within normal limits, except for obesity (with a body mass index ranging from about 43 to 49), high blood pressure, positive spinal facet loading and tenderness, spasms in the trapezius muscles, positive SLR, tenderness over the sacroiliac joints and occipital areas, positive PSIS, decreased sensation in the upper and lower extremities, positive Spurling's, positive Kemp's, positive Tinel's at the occipital areas, positive Patrick's, positive Torque, 1+ reflexes in the lower extremities, slow movements, antalgic/abnormal gait, difficulty hopping and squatting, trace crepitus in both knees, tenderness over the right knew, and decreased range of motion in her neck, back, right shoulder, elbows, wrists, knees, hips, and ankles. There is no evidence in the record that the claimant has had any muscle atrophy or deficits in fine finger manipulative ability since the alleged onset date and, since the alleged onset date, her muscle and grip strength have been graded, at words, at "4" out of "5".

(R. 24). Stated another way, Plaintiff's health is pretty good other than the *thirty-three* objective limitations listed in this paragraph alone.

5

The paragraph becomes even more farcical when one decodes the medical jargon. In layman's terms, the test results cited by the ALJ mean the following:

- Positive SLR (straight leg raise) – indicative of lumbar disc herniation, facet joint cyst, or hypertrophy[1];

- Positive PSIS (standing flexion test) – indicative of sacroiliac joint disfunction[2];

- Positive Spurling's – indicative of cervical nerve root compression[3];

- Positive Kemp's – indicative of lumbar posterior facet syndrome[4];

- Positive Tinel's – indicative of nerve compression[5];

- Positive Patrick's – indicative of hip, sacroiliac joint or lumbar spine pathologies[6];

- +1 reflexes – on a scale from 0 to +5, indicates low or diminished reflexes[7].

All these clinical signs demonstrate that Plaintiff suffers from significant spinal and nerve conditions.

And that's just one paragraph! Elsewhere in the Decision the ALJ notes that Plaintiff has undergone multiple neck and back surgeries, including lumbar fusion and decompression, and that imaging tests have degenerative changes and disc bulges at all levels of her spine, scoliosis of her lumbar spine, hemangiomas (benign blood vessel tumors) at multiple lumbar levels leading to narrowing of the spinal column, and degenerative changes in both knees. She's had surgery on her left knee. She's been to physical therapy, orthopedic specialists, and pain specialists, and has been prescribed *thirteen* different medications for her pain.

---

[1] https://www.ncbi.nlm.nih.gov/books/NBK539717/
[2] https://www.physio-pedia.com/Standing_Flexion_Test
[3] https://www.ncbi.nlm.nih.gov/books/NBK493152/
[4] https://www.physio-pedia.com/KEMP_test
[5] https://www.healthline.com/health/tinels-sign#test
[6] https://www.physio-pedia.com/FABER_Test
[7] https://informatics.med.nyu.edu/modules/pub/neurosurgery/reflexes.html

The record also demonstrates significant mental impairments, including severe depression and PTSD. Plaintiff has been prescribed *ten* different psychotropic medications to supplement consistent outpatient therapy. Plaintiff told her therapist in 2017 that she wanted to commit suicide by jumping from a moving vehicle. In the face of this evidence, the ALJ merely notes that Plaintiff's mental status examinations by other medical professionals were "generally within normal limits, except for tearfulness and anxious and sad mood." (R. 20). ***Except for tearfulness and anxious and sad mood?!?*** How else would the ALJ like depression and PTSD to present? True, as the ALJ noted, Plaintiff has not been hospitalized, but the lack of institutionalization is not evidence that the Plaintiff is capable of gainful employment. *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015) ("The institutionalization of the mentally ill is generally reserved for persons who are suicidal, otherwise violent, demented, or (for whatever reason) incapable of taking even elementary care of themselves.").

These examples don't even incorporate Plaintiff's urinary incontinence (which the ALJ appears not to have considered), her use of a cane and electric wheelchair (the ALJ simply notes that there is no prescription for either), her clinical findings consistent with fibromyalgia (which the ALJ appears to have missed), her chronic kidney disease, and other documented maladies in the record. Plaintiff's consistent, serious conditions are well-documented, yet repeatedly waived away by the ALJ.

As stated above, the Court is cognizant of the fact that it should not substitute its judgment for that of the Commissioner. The ALJ need only "rationally articulate the grounds for her decision." *Steele*, 290 F.3d at 941. Even a "sketchy" opinion can be sufficient if it is clear the ALJ considered the important evidence and the reasoning can be traced. *Brindisi ex rel. Brindisi v. Barnhard*, 315 F.3d 783, 787 (7th Cir. 2003). However, the Court finds no reasoning to be traced

7

here. The Court cannot, from the record or the Decision, conclude how Plaintiff, suffering from the laundry list of conditions diagnosed, suffering the myriad of symptoms demonstrated by objective testing, and taking nearly two dozen different medications could be deemed well enough to maintain gainful employment. No logical bridge has been built here, and the Decision cannot stand.

**4.**     *Remedy*

The appropriate remedy in most cases where the Court finds the ALJ's decision wanting is to remand for further proceedings. This is so because a court does not have the authority to award disability benefits on grounds other than those provided under 42 U.S.C. § 423. Subsection (a)(1)(E) requires that the claimant must be disabled under the Act in order to qualify for benefits. As the Supreme Court stated in *Office of Personnel Management v. Richmond*, payment from the U.S. Treasury must be authorized by a statute. 496 U.S. 414, 424 (1990). Obduracy is not a ground on which to award benefits; the evidence properly in the record must demonstrate disability. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005).

The Court believes that the record is developed enough to order the award of damages. However, the award of damages is an extraordinary remedy and, despite the clear and significant deficiencies in the ALJ's opinion, the Court finds that the ALJ is entitled to another chance to make a correct decision. As such, this matter will be remanded.

**C.**     **Conclusion**

For the foregoing reasons, the Decision (R. 15-27) is REVERSED. This matter is REMANDED for proceedings consistent with this Opinion and Order. The Clerk is DIRECTED to enter judgment in favor of Plaintiff and against Defendant.

SO ORDERED on October 20, 2020.

                                           s/ Holly A. Brady
                                          JUDGE HOLLY A. BRADY
                                          UNITED STATES DISTRICT COURT